Newell RANDLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–01–00475–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 31, 2002.

Rehearing Overruled Nov. 27, 2002.

Cary M. Faden, Sugar Land, for Appellant.

John H. Harrity, III, Assistant District Attorney–Fort Bend County, Richmond, for Appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

OPINION

TIM TAFT, Justice.

A jury found appellant, Newell Randle, guilty of possession of a controlled substance and assessed punishment at 20 years in prison. We address whether the trial court abused its discretion by (a) admitting a tape-recorded statement in which

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

appellant gave an inaudible answer to the question of whether he understood one of his rights, (b) finding that the statement was not tainted by an unlawful arrest, (c) finding that appellant admitted in the statement that he ran a stop sign, and (d) finding that an officer was able to observe appellant run a stop sign by viewing appellant from an adjacent alleyway through buildings. We affirm.

## Facts

The Fort Bend County Narcotics Task Force ("the Task Force") was conducting surveillance of a suspected drug dealer named Guy Williams, who resided at 209 Fourth Street, Rosenberg, Texas. The Task Force placed a wiretap on Williams' telephone and monitored his telephone calls and any activity around his residence.

On August 23, 1999, the Task Force intercepted two phone calls between appellant and Williams. The intercepted conversations discussed an imminent illegal drug transaction. Approximately 15 minutes later, appellant arrived at Guy Williams' residence and the Task Force set up in strategic locations.

The Task Force observed appellant at Williams' house for approximately five minutes before appellant drove away. Task Force member Sergeant Kenneth Ray Seymour advised patrol units to stop the car appellant was driving. Officer Willie McQueen was parked in an alleyway between Fifth Street and Sixth Street when he saw appellant's car approaching.

Sergeant Seymour, who was following two cars behind appellant, observed appellant run a stop sign at Sixth Street and Avenue F. Officer McQueen saw appellant run a stop sign at Sixth Street and Avenue E and another stop sign at Sixth Street and Avenue F. The record is unclear, but Officer McQueen was apparently traveling on an adjacent alleyway when he observed appellant run at least one of the two stop signs. Even though houses and buildings partially obstructed his view, Officer McQueen clearly saw appellant run the stop signs.

Officer McQueen stopped appellant for running the two stops signs. Officer McQueen instructed appellant to get out of his vehicle and noticed that appellant appeared to be nervous. Officer McQueen asked appellant if he had any contraband inside his vehicle. Appellant gave Officer McQueen consent to search his vehicle. Officer McQueen's search of the vehicle did not reveal any contraband.

Subsequently, Officer McQueen handcuffed appellant and placed him under arrest for running the two stop signs. Officer McQueen patted down appellant, and escorted him to Officer Andrew McKissack's patrol car. Prior to placing appellant in Officer McKissack's patrol car, Officer McQueen lifted the back seat of the car to check for contraband, pursuant to standard procedure. Officer McKissack transported appellant to the Rosenberg city jail, and, upon removal of appellant from the vehicle, he observed a powdery white substance throughout the back seat. The white powdery substance was sent to the Texas Department of Public Safety for testing and was identified as 4.33 grams of cocaine.

Appellant was subsequently arrested on April 27, 2000, pursuant to an arrest warrant, for possession of the cocaine. On April 28, 2000, Detective Remon Green and Special Agent Shayne Kelley met with appellant while he was in custody at the Rosenberg Police Department. Detective Green went over appellant's rights with him. Appellant stated that he understood his rights and that he waived them. During the tape-recorded statement, appellant

stated that he possessed the cocaine and tried to dump it in the back seat.

### Admissibility of Statement

In his first point of error, appellant raises two arguments: (1) the tape-recorded statement should not have been admitted because appellant gave an inaudible answer to the question of whether he understood one of his rights; and (2) the statement should not have been admitted because it was the fruit of an unlawful pretext arrest. In his second point of error, appellant raises two additional arguments: (1) the trial court abused its discretion in admitting appellant's statement because the trial court misinterpreted a portion of the tape as containing an admission by appellant that he ran the stop signs; and (2) one officer's testimony that appellant ran the stop sign was incredible because the officer could not have viewed the offense from an adjacent alleyway through buildings.

### A. Standard of Review

In a suppression hearing, the trial court is the sole trier of fact, and judge of both the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). The trial court may accept or reject all or any part of a witness's testimony. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim.App.1993). An appellate court must view the evidence in the light most favorable to the trial court's ruling at the suppression hearing. *Upton v. State*, 853 S.W.2d 548, 553 (Tex.Crim.App.1993). In reviewing the trial court's decision, an appellate court does not engage in its own factual review; rather, it determines only whether the record supports the trial court's fact findings. *Corea v. State*, 52 S.W.3d 311, 315 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). However, we will conduct a de novo review of the court's application of law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000).

### B. Tape–Recorded Statement Partially Inaudible

Appellant first contends the trial court abused its discretion in denying his motion to determine the admissibility of his tape-recorded statement due to its "inaudible nature." Specifically, appellant contends that, because the tape-recorded statement is inaudible at the point where he answered the question of whether he understood one of his rights, appellant did not voluntarily waive all of his rights. During the tape-recorded statement, the following occurred:

DETECTIVE GREEN: Did you see his ID? Did you see it? Okay. Before we start, I'm going to go ahead and read you your Miranda warning. Okay. Listen to me very carefully and make sure you understand it. If you don't understand something, let me know you didn't understand it; and I'll reread it to you. Okay?

DEFENDANT: Yes, sir.

DETECTIVE GREEN: The first one is: You have a right to remain silent and not make any statements at all, and any statements you make may be used against you, and probably will be used against you, at your trial. Do you understand that right?

DEFENDANT: Yes, sir.

DETECTIVE GREEN: Okay. Any statement you make may be used as evidence against you in Court. Do you understand that right?

(Inaudible answer.)

DETECTIVE GREEN: Okay. You have the right to have a lawyer present to advise you prior to and during any

questioning. Do you understand that right?

DEFENDANT: Yes, sir.

DETECTIVE GREEN: Okay. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to you prior to and during any questioning. Do you understand that right?

DEFENDANT: Uh-huh.

DETECTIVE GREEN: You have the right to terminate this interview at any time. Do you understand that right?

DEFENDANT: Yes, sir.

DETECTIVE GREEN: The rights that I read to you, do you knowingly, intentionally, and voluntarily waive those rights to speak with us in regards to the things we have to speak to you about?

DEFENDANT: Yes.

DETECTIVE GREEN: You do? Okay. First of all, before I close this up, do you understand all your rights? You understand?

DEFENDANT: I know them.

DETECTIVE GREEN: All right. Okay. We didn't go too fast or nothing?

DEFENDANT: No.

DETECTIVE GREEN: All right. Everything was clear?

DEFENDANT: Yes, sir.

Subsequently, appellant confessed to being in possession of a controlled substance. The court made findings of fact, namely that "the defendant voluntarily waived all his constitutional rights prior to making his oral statement contained in the tape." Further, the court found that "the tape was audible, albeit scratchy, understandable, and that it was operated properly." TEX.CODE CRIM. PROC. ANN. art. 38.22 § 3 (Vernon 2002).[1]

 In reviewing the voluntariness of a confession, we look at the totality of the circumstances. *Barefield v. State*, 784 S.W.2d 38, 41 (Tex.Crim.App.1989). Once the accused claims that the confession was not voluntary, the burden is upon the State to prove its voluntariness. *See Farr v. State*, 519 S.W.2d 876, 880 (Tex.Crim.App. 1975). Here, appellant is apparently relying upon a violation of article 38.22, section 3(a)(2) and (e), which requires strict construction of the requirement that the recording show that an accused knowingly, intelligently, and voluntarily waives his

1. Article 38.22 of the Texas Code of Criminal Procedure provides in pertinent part:

(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

(e) The courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state, except that:

(1) only voices that are material are identified; and

(2) the accused was given the warning in Subsection (a) of Section 2 above or its fully effective equivalent.

TEX.CODE CRIM. PROC. ANN. art. 38.22 § 3(a), (e).

rights. Tex.Code Crim. Proc. art. 38.22, § 3(a)(2), (e) (Vernon Supp.2002). The only exception is that a warning, which is a fully effective equivalent to the statutory warnings is sufficient. Tex.Code Crim. Proc. art. 38.22, § 3(e)(2) (Vernon Supp. 2002).

■ First, the record shows that appellant was given his statutory rights precisely as contained in article 38.22 of the Code of Criminal Procedure. The only omission was one answer by appellant to the question of whether he understood he was waiving his right to not have any statement he made used as evidence against him in court. From the answers that are intelligible, however, we are able to discern that appellant understood that he had the right to remain silent; that anything he said could be used against him at his trial; that he could have a lawyer present during any questioning; that if he could not afford a lawyer, one would be appointed to him; and that he could terminate the interview at any time. Appellant was also instructed to let the detective know if appellant did not understand any right, and appellant never told the detective he did not understand any right. After the detective elicited an affirmative response to whether appellant understood each right, the detective said "Okay" before proceeding with the next right, and the detective said "Okay" after appellant's inaudible answer to whether appellant understood his second right. The recording also explicitly shows that appellant knowingly, intentionally, and voluntarily waived all of his rights. Thereafter, appellant was again asked if he understood all of his rights, and appellant stated, "I know them." He agreed that the officer had not gone too fast in reading appellant his rights, and that everything was clear.

Under these circumstances, it is clear that appellant understood he was waiving his right to not have any statement he made used as evidence against him in court, even though his answer to the question of whether he understood this right was inaudible. Indeed, from the audible portions of the tape, it is clear that the inaudible answer was in the affirmative. We hold that the trial court did not abuse its discretion in finding that appellant gave a voluntary, knowing, and intelligent waiver of his rights during the interview. We overrule appellant's first argument under his first point of error.

The discussion of the remaining points of error does not meet the criteria for publication, Tex.R.App. P. 47, and is thus ordered not published.

We affirm the judgment of the trial court.