Opinion issued August 11, 2005







     







In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00494-CR




OLUKUNLE GABRIEL ADESIYAN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 959700




MEMORANDUM OPINION

          A grand jury indicted appellant Olunkunle Gabriel Adesiyan for the felony
offense of theft of property, aggregated at a total value of greater than $20,000 and
less than $100,000. A jury found Adesiyan guilty of the lesser included offense of
felony theft of property, aggregated at a total value of greater than $1,500 and less
than $20,000, and assessed punishment at two years’ confinement and a $10,000 fine. 
Adesiyan contends (1) the trial court erred in denying his motion to quash the
indictment; (2) the trial court erred in denying his motion to suppress; and (3) the
evidence is legally and factually insufficient to support his conviction. We affirm.
The BackgroundAccountemps, a company that provides temporary financial and accounting
professionals, employed Adesiyan. Accountemps placed Adesiyan, an accountant,
in a Coca-Cola, Inc. office in Houston. Accountemps required Adesiyan to document
the hours that he worked for Coca-Cola on a time sheet, which Accountemps
provided to him. Adesiyan then faxed his time sheets to Accountemps each week. 
After receiving Adesiyan’s time sheets, Accountemps paid Adesiyan and billed Coca-Cola for the time Adesiyan worked. Cheryl Munson supervised Adesiyan’s work for
Accountemps.
          Gary Stone, a senior accounting manager at Coca-Cola, was the onsite person
designated to approve Adesiyan’s time sheets. Stone explained to Adesiyan that, as
an employee of Accountemps, Adesiyan was not permitted to work any overtime
hours. In February 2003, Coca-Cola’s human resources department noticed that two
of Adesiyan’s time sheets bore similar signatures, purporting to be Stone’s, that
authorized overtime hours. Human resources informed Stone, and Coca-Cola began
an investigation. The investigation revealed that Adesiyan had submitted numerous
time sheets containing false information and forged signatures. Adesiyan had used
an original time sheet actually signed by Stone, copied it, and then changed the
information concerning the hours he had worked to include overtime. Adesiyan faxed
these time sheets to Accountemps for payment based on the falsely submitted hours. 
          After discovering the extent of Adesiyan’s fraud, Coca-Cola and Accountemps
contacted the Harris County District Attorney’s Office. Investigators Boethel and
Kelly from the district attorney’s office met with Stone at the Coca-Cola office on a
Friday in an effort to intercept his weekly time sheet facsimile to Accountemps. 
Stone and the investigators positioned themselves in an office in the accounting area
and observed Adesiyan send his time sheet to Accountemps. Stone checked the
facsimile machine and confirmed that Adesiyan faxed his time sheet to
Accountemps’s facsimile number. Stone then requested that Accountemps fax to him
and the investigators a copy of the time sheet Adesiyan had just submitted. 
          After confirming that Adesiyan had faxed Accountemps a time sheet with a
fraudulent overtime claim, Stone entered Adesiyan’s office, obtained the time sheet
Adesiyan had just faxed to Accountemps, and asked Adesiyan to go with him to
another office and meet with the investigators. Adesiyan complied. During the initial
interview, Adesiyan denied submitting false claims, but admitted that he had faxed
the time sheet to Accountemps. Adesiyan told the investigators that Stone had
approved his overtime and had signed his time sheet earlier that morning. After the
interview, the investigators placed Adesiyan under arrest, allowed him to collect his
personal items from his office, and transported him to the district attorney’s office. 
The investigators found a time sheet with Stone’s original signature in blue ink, and
whiteout liquid in Adesiyan’s briefcase.
          After Adesiyan responded that he understood his Miranda rights, the
investigators further questioned him at the district attorney’s office. During this
videotaped interview, the investigators presented Adesiyan with the forged time
sheets, and Adesiyan admitted that he had copied ten time sheets and submitted
approximately $10,000 in unauthorized overtime. 
          At trial, Munson testified that Accountemps reimbursed Coca-Cola over
$20,000 for Adesiyan’s falsely submitted time sheets. Munson further testified that
Accountemps overpaid Adesiyan $15,000 for regular, holiday, and overtime hours,
as well as bonus pay, none to which he was entitled. Adesiyan’s pay stubs indicate
that, while he worked at Coca-Cola, Accountemps paid him over $10,000 in overtime
pay. 
 
DiscussionMotion to Quash the Indictment
          Adesiyan contends the trial court erred in denying his motion to quash the
indictment because the indictment fails to provide adequate notice of the pending
charges. Specifically, Adesiyan contends the indictment (1) fails to specify the
method by which he “allegedly deceived the complainant,” and (2) fails to allege that
he appropriated the money without the effective consent of the owner. 
          We review the trial court’s decision to grant a motion to quash for an abuse of
discretion. Geter v. State, 779 S.W.2d 403, 404 (Tex. Crim. App. 1989); Jordan v.
State, 56 S.W.3d 326, 329 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). A trial
court abuses its discretion in denying a motion to quash if the language of the
indictment is so vague or indefinite as to deny the defendant effective notice of the
acts he allegedly committed. DeVaughn v. State, 749 S.W.2d 62, 67 (Tex. Crim. App.
1988); State v. York, 31 S.W.3d 798, 800–01 (Tex. App.—Dallas 2000, pet. ref’d). 
          “A person commits an offense if he unlawfully appropriates property with
intent to deprive the owner of property.” Tex. Pen. Code Ann. § 31.03(a) (Vernon
2003). Appropriation of property is unlawful if it is “without the owner’s effective
consent.” Tex. Pen. Code Ann. § 31.03(b)(1). Generally, if the Legislature
statutorily defines a term, the State need not further allege it in the indictment. Geter,
779 S.W.2d at 405 (citing Thomas v. State, 621 S.W.2d 158, 161 (Tex. Crim. App.
1981)). If the statutory term provides for more than one manner or means to commit
that act or omission, however, then, upon timely request, the State must allege the
particular manner or means it seeks to establish. Id. at 405–06.
          The indictment in this case alleges that Adesiyan:
. . . on or about AND BETWEEN NOVEMBER 10, 2001 AND
FEBRUARY 14, 2003, did then and there unlawfully, pursuant to one
scheme and continuing course of conduct, appropriate, by acquiring and
otherwise exercising control over the property, namely, MONEY, owned
by CHERYL MUNSON AND ACCOUNTEMPS, hereafter styled the
Complainant, with the intent to deprive the Complainant of the property
and the total value of the property appropriated was over twenty
thousand dollars and under one hundred thousand dollars. 

In Geter, the Texas Court of Criminal Appeals held that in a theft prosecution in
which the State relies upon a defendant’s act or omission to negate effective consent,
the indictment must allege the particular statutory negatives that vitiated consent, else
the indictment is subject to a timely motion to quash for lack of notice. 779 S.W.2d
at 407. The Legislature has provided that consent is not effective, if it is: 
(1) induced by deception or coercion; (2) given by a person the actor
knows is not legally authorized to act for the owner; (3) given by a
person who because of their youth, mental disease or defect, or
intoxication is known by the actor to be unable to make reasonable
property dispositions; (4) given solely to detect the commission of an
offense; or (5) given by a person who, by reason of advanced age, is
known by the actor to have a diminished capacity to make informed and
rational decisions about the reasonable disposition of property. 

See Tex. Pen. Code Ann. § 31.01(3) (Vernon 2003).

          Here, the State maintains that Adesiyan never had consent to work overtime,
and thus section 31.03 never came into play. Adesiyan responds that only the
overtime was allegedly unauthorized, and the indictment fails to distinguish between
regular hours and overtime hours—or even to mention the means of committing the
theft at all.
          Even assuming that Adesiyan is correct that the indictment fails to convey a
requisite item of notice to obtain a reversal of his conviction, Adesiyan must also
show that the State’s failure to give that particularized notice impacted his ability to
prepare his defense. Geter, 779 S.W.2d at 407. In his briefing to this court, Adesiyan
fails to address whether the alleged defect—the failure to provide the precise theory
of deception—prejudiced his defense. We therefore conclude that Adesiyan has
failed to show harm from the trial court’s denial of his motion to quash the
indictment. See id. 
Motion to Suppress—Illegal Arrest
          Adesiyan contends the trial court erred in denying his motion to suppress the
facsimile copy of his forged time sheet and his videotaped interview at the district
attorney’s office because they are the fruits of an illegal arrest. Specifically,
Adesiyan contends the officers had no warrant and lacked probable cause to arrest
him. Adesiyan based his motion to suppress on federal and state constitutional
grounds, as well as on a state statutory ground. U.S. Const. amends. IV, V, VI, XIV;
Tex. Const. art. I, §§ 9, 10, 19; Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon
2005).


 
          In reviewing a trial court’s ruling on a motion to suppress, we apply the
bifurcated standard of review articulated in Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). We defer to a trial court’s determination of historical facts and
review de novo the trial court’s application of the law of search and seizure. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing Guzman, 955
S.W.2d at 88–89). If the issue involves the credibility of a witness, we defer to a trial
court’s ruling, as a trial court is in a better position to evaluate the credibility of
witnesses before it. Guzman, 955 S.W.2d at 89. If the trial court is called upon to
apply the law to the facts, and the ultimate resolution of the issue does not turn on an
evaluation of the credibility and demeanor of a witness, we review the issue de novo. 
Id. at 89. 
          A warrantless arrest without probable cause is illegal, and the lack of probable
cause is not cured by the subsequent discovery of incriminating evidence. See Wilson
v. State, 621 S.W.2d 799, 804 (Tex. Crim. App. 1981); see also Givens v. State, 949
S.W.2d 449, 451 (Tex. App.—Fort Worth 1997, pet. ref’d). If an accused makes a
state constitutional argument, then the proper inquiry is the reasonableness of the
seizure under the totality of the circumstances. State v. Steelman, 93 S.W.3d 102, 106
n.5 (Tex. Crim. App. 2002). On the other hand, if an accused makes a statutory
argument, the proper inquiry is whether (1) probable cause exists with respect to that
individual, and (2) the arrest falls within a statutory exception. Steelman, 93 S.W.3d
at 107 (citing Beverly v. State, 792 S.W.2d 103, 104–05 (Tex. Crim. App. 1990)). 
One such statutory exception, article 14.01(b), provides that “[a] peace officer may
arrest an offender without a warrant for any offense committed in his presence or
within his view.” Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005). In
applying this statute, the Texas Court of Criminal Appeals has held: 
The test for probable cause for a warrantless arrest under [article
14.01(b)] is whether at that moment the facts and circumstances within
the officer’s knowledge and of which he had reasonably trustworthy
information were sufficient to warrant a prudent man in believing that
the arrested person had committed or was committing an offense.

Steelman, 93 S.W.3d at 107 (some punctuation omitted). “An offense is deemed to
have occurred within the presence or view of an officer when any of his senses afford
him an awareness of its occurrence.” Id. (citing Clark v. State, 35 S.W.2d 420, 422
(Tex. Crim. App. 1931)). The information afforded to the officer by his senses must
give him reason to believe that the particular suspect committed the offense. Id.
(citing Muniz v. State, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993)). 
          Here, the trial court found that Investigators Boethel and Kelly, along with
Stone, watched Adesiyan send his time sheet to Accountemps—a time sheet that bore
Stone’s forged signature and authorized unapproved overtime hours not worked. 
The trial court further found that Stone entered Adesiyan’s office, obtained the forged
time sheet and facsimile confirmation page, and handed these two documents to the
investigators. The investigators then introduced themselves to Adesiyan, identified
themselves as law enforcement officers, and explained to Adesiyan why they were
speaking to him. Based on Adesiyan’s evasive answers and the forged time sheet, the
investigators read Adesiyan his Miranda warnings and placed him under arrest for
theft of property. 
          Adesiyan concedes that the record suggests that he did not have the effective
consent of Accountemps to work the hours listed on his time sheet. Adesiyan
contends, however, that at the time of his arrest, the investigators were unaware that
Accountemps had not given Adesiyan consent to work the hours he stated on his time
sheet. Adesiyan contends that “information learned or acquired after an arrest or
search cannot be used to justify the search.” Adesiyan cites Bumper v. North
Carolina, 391 U.S. 543, 549, 88 S. Ct. 1788, 1792 (1968), and Scott v. State, 531
S.W.2d 825, 827 (Tex. Crim. App. 1976) to support this contention. 
          The record reveals, however, that, before Adesiyan’s arrest, Investigators
Boethel and Kelly met with Stone, Munson, and the district attorney to discuss
Adesiyan’s forgery. Stone had collected Adesiyan’s time sheets and presented this
evidence to Accountemps and the district attorney’s office. Stone provided the
district attorney’s office with this information before the day they observed him send
a forged time sheet to Accountemps. Thus, the investigators possessed information
in addition to observing Adesiyan fax his time sheet to Accountemps.
          Deferring to the trial court’s findings of historical facts, we conclude that the
investigators were authorized to arrest Adesiyan without a warrant. First, the
investigators witnessed Adesiyan commit theft. See Tex. Code Crim. Proc. Ann.
art. 14.01(b). Second, considering the totality of circumstances, the investigators
possessed probable cause for Adesiyan’s warrantless arrest, given the facts and
circumstances available to the investigators, including (1) their observation of
Adesiyan faxing documents; (2) Stone’s statement that he did not sign the time sheet
Adesiyan faxed; (3) a time sheet that bore Stone’s forged signature; and (4) the
facsimile confirmation sheet that showed that the time sheet had been faxed to a
number at Accountemps. We hold that this information is sufficient to support
probable cause and that the warrantless arrest thus was authorized under Article 14.01
and both the Texas and federal constitutions. The trial court therefore properly
denied Adesiyan’s motion to suppress the forged time sheet.



Motion to Suppress–Videotaped Statement
          Adesiyan further contends the investigators intimidated and frightened him,
and thus he involuntarily provided his videotaped statement. 
          A statement may be used against an accused if it is “freely and voluntarily
made without compulsion or persuasion.” Tex. Code Crim. Proc. Ann. art. 38.21
(Vernon 2005). In determining the voluntariness of the statement, we weigh the
totality of circumstances. Barefield v. State, 784 S.W.2d 38, 41 (Tex. Crim. App.
1989), overruled on other grounds, Zimmerman v. State, 860 S.W.2d 89, 94 (Tex.
Crim. App. 1993); Randle v. State, 89 S.W.3d 839, 842 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d). 
          Once the defendant presents evidence that raises a voluntariness question, the
burden shifts to the State to controvert such evidence. State v. Terrazas, 4 S.W.3d
720, 725 (Tex. Crim. App. 1999). This burden arises, however, only if the defendant
produces such evidence. At the motion to suppress hearing, the trial court is the sole
judge of witness credibility and weight of witness testimony. Wyatt v. State, 23
S.W.3d 18, 23 (Tex. Crim. App. 2000) (citing Penry v. State, 903 S.W.2d 715, 744
(Tex. Crim. App. 1995)). We do not disturb trial court findings that are supported by
the record. Id. 
          Here, the trial court heard testimony from Investigators Boethel and Kelly, as
well as from Adesiyan, and made several findings of fact regarding the voluntariness
of Adesiyan’s statement. Among them, the trial court found that the investigators
properly read Adesiyan his Miranda warnings before he gave his videotaped
statement. The trial court further found that the investigators did not threaten,
mistreat, or promise anything to Adesiyan before he gave his statement. Further, the
trial court concluded that Adesiyan “voluntarily, intelligently and knowingly waived
his rights before his statement was provided to Investigators Kelly and Boethel.” 
Based on its assessment of the credibility of the witnesses, the trial court concluded
that Adesiyan voluntarily waived his legal rights before giving the videotaped
statement. The videotaped interview included in the record, as well as the testimony
of the two investigators, supports the trial court’s findings. Adesiyan testified
contrary to these findings at the motion to suppress hearing. We defer to the trial
court’s findings of fact and determination of credibility as they are supported by the
record. We therefore hold that the trial court did not err in denying Adesiyan’s
motion to suppress his videotaped statement. See id. at 25. 
Legal and Factual Sufficiency
          Adesiyan contends that the evidence is legally and factually insufficient to
support his conviction for felony theft because the State failed to prove that he did not
work the hours listed on his time sheets. 
Legal Sufficiency
          “In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.” Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), cert. denied, 125 S. Ct. 1697
(2005). 
          The State presented evidence that Accountemps did not authorize Adesiyan to
work overtime hours. The record indicates that Adesiyan submitted forty-eight
forged time sheets to Accountemps that falsely claim payment for regular, holiday,
and overtime hours. Stone testified that he did not sign Adesiyan’s time sheets, and
the investigators testified that they watched Adesiyan fax a forged time sheet to
Accountemps. Accountemps paid Adesiyan based upon his forged time sheets. 
Further, in his videotaped interview, Adesiyan admitted that he forged and submitted
at least ten time sheets for approximately $10,000 in overtime work. We therefore
conclude that the evidence is legally sufficient to establish that Adesiayan unlawfully
appropriated funds from Accountemps. 
Factual Sufficiency
          “In a factual sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met.” Id. In a
factual sufficiency review, we may not substitute our judgment for that of the fact
finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). In conducting
a factual sufficiency review, we discuss the evidence that Adesiyan contends most
undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003). Unless the available record reveals that a different result is appropriate,
we defer to the jury’s determination concerning the weight to place upon conflicting
testimony because resolution of facts often turns on evaluation of credibility and
demeanor. See Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). 
          In response to the State’s evidence, Adesiyan adduced evidence that he actually
worked some of the hours that he had claimed. Adesiyan relies on Stone’s admission
that neither Coca-Cola’s security system nor Adesiyan’s computer use could monitor
the time at which Adesiyan actually entered and exited Coca-Cola’s building. 
Adesiyan further relies on the testimony of his co-worker, Natasha Bower, who
testified that she saw Adesiyan at work between 7:30 a.m. and 8:00 a.m. on a “few
occasions.” 
          In contrast to Bower’s testimony, however, Stone testified that Adesiyan
arrived to work around 8:30 a.m., and that he never observed Adesiyan at work by
7:30 a.m. Kathy Mallory, who worked at Coca-Cola, testified that Adesiyan arrived
to work after 8:30 a.m., and that he arrived after 9:00 a.m. at least once per week. 
Mallory further stated that Adesiyan left the office at 5:00 p.m., or “a little after.” 
Karen Dobson, a senior account manager at Coca-Cola, also testified that Adesiyan
worked no more than eight hours per day. Dobson further testified that she frequently
worked late and she never saw Adesiyan working late.
          Stone also testified that he did not authorize Adesiyan to work any overtime
hours, that he expressly told Adesiyan not to work any overtime hours, that “there
was no overtime being worked,” and that he would have refused to sign any of
Adesiyan’s time sheets that contained over forty hours of work per week. Stone
further testified that he never authorized Adesiyan to use copies of his signature to
claim overtime hours on Adesiyan’s time sheets. Mallory and Dobson also testified
that Adesiyan was not allowed to work any overtime hours. Moreover, Adesiyan
admitted in his videotaped interview that he forged and submitted at least ten time
sheets for approximately $10,000 in overtime work. 
          Upon viewing the evidence in a neutral light for a factual sufficiency analysis,
we conclude that the jury was justified in finding Adesiyan guilty beyond a
reasonable doubt of felony theft of property. See Escamilla, 143 S.W.3d at 817. The
evidence supporting the verdict is not so weak that the jury’s finding is clearly wrong
and manifestly unjust; nor is Adesiyan’s contrary evidence so strong that the State’s
burden to prove the charged offense beyond a reasonable doubt could not have been
met. See id. We therefore conclude that the evidence is factually sufficient to support
Adesiyan’s conviction for felony theft of property. 
 

Conclusion
          We conclude (1) the trial court did not err in denying Adesiyan’s motion to
quash the indictment; (2) the trial court did not err in denying Adesiyan’s motion to
suppress; and (3) the evidence is legally and factually sufficient to support Adesiyan’s
conviction for felony theft of property. We therefore affirm the judgment of the trial
court. 
 

                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Bland.
Do not publish. Tex. R. App. P. 47.2(b).