Opinion issued January 5, 2006










     




In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00299-CR




TERRENCE LAVAN JENKINS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 977556



 
MEMORANDUM OPINION

          Appellant, Terence Lavan Jenkins, was convicted in a bench trial of possession
of less than one gram of a controlled substance, oxycodone. See Tex. Health &
Safety Code Ann. §§ 481.115(a),(b), 481.102(3)(A) (Vernon 2003 & Supp. 2005).
The trial court assessed punishment at confinement for one year in the state jail. 
          In two points of error, appellant contends that the trial court erred in overruling
his motion to suppress the narcotics seized from the car that he had been driving and
that the evidence was not legally or factually sufficient to support his conviction
because the State did not provide sufficient proof of affirmative links between
appellant and the oxycodone.
          We affirm.
Background
          On the evening of February 14, 2004, Officer Philip Bryan was stationed in a
marked patrol car outside the Katz Club on Bissonnet Street in Houston, Texas. 
While stationed outside the club, Officer Bryan observed appellant drive his car into
the parking lot of the club, exit his car, and enter the club. Shortly afterwards,
appellant then exited the club, got back in his car, and drove away. Given the Katz
Club’s reputation as a “hot spot” and the brevity of appellant’s stay at the club,
Officer Bryan suspected that appellant had been involved in a narcotics transaction
and decided to follow him. 
          While following appellant, Officer Bryan witnessed two traffic violations and
stopped appellant as a result. Officer Bryan observed that appellant’s car did not
have a license plate light and that the license plate was dirty, making it difficult to
read. Both are violations of the Texas Transportation Code. Tex. Transp. Code
Ann. §§ 502.409(a)(7), (b), 547.004(a)(2), 547.322(f) (Vernon 1999 & Supp. 2005). 
Officer Bryan testified that, as he approached appellant, he had his flashlight pointed
into the vehicle and had no trouble seeing into the interior. In addition to appellant,
there was a female passenger in the car as well. This passenger was Amanda Jordan,
appellant’s then girlfriend and the owner of the car. 
          Officer Bryan asked appellant for his driver’s license and insurance. Appellant
told Officer Bryan that he did not have his license with him and began looking for it
in the car. Appellant searched through the pockets in his clothing and on the
floorboard area of the car. When appellant began looking on the floorboard, Officer
Bryan became wary and changed his body position so that he could better see what
was happening in the car—fearing that appellant might reach for a gun. Officer
Bryan moved from the driver’s side window area to the “front windshield part right
at an angle, so [he] could get a better look into the vehicle” and see what appellant
was doing. Appellant then began looking through the center console of the car with
his back to the driver’s side window. According to Officer Bryan, appellant was
attempting to conceal his actions from the officer, and he seemed unaware of Officer
Bryan’s changed location. However, given Officer Bryan’s change of position, he
could see inside the center console. Officer Bryan positioned the beam of his
flashlight directly on the center console and saw several plastic bags containing pills. 
Officer Bryan suspected that these pills were illegal narcotics given that there were
no prescription bottles present. When appellant noticed the light shining into the
center console, he suddenly closed the lid and turned back around. According to
Officer Bryan, when appellant looked up, the expression on his face was that of being
“busted.” Officer Bryan explained this term to mean that it was a “flush kind of
defeated look.” 
          Officer Bryan asked appellant to get out of the car and placed appellant in the
back seat of his patrol car. Officer Bryan ascertained that the car belonged to the
passenger, Amanda Jordan, and gained her permission to search the car. Upon
searching the car, Officer Bryan found several plastic bags, some of which contained
pills. Officer Bryan took the bags back to his patrol car where appellant was seated
and asked appellant if he had a prescription for the drugs. Appellant said he did not. 
He also said that the drugs were not his, but that he did know to whom they belonged
and that he would take care of it.
          Appellant was taken into custody and charged with the state jail felony offense
of possession of less than one gram of a controlled substance, oxycodone. Officer
Bryan testified that the decision to charge only appellant was based on his actions in
entering and leaving the Katz Club and his actions during the traffic stop.
Motion to Suppress
          In his first point of error, appellant contends that the trial court erred in
overruling appellant’s motion to suppress evidence because the testimony showed
that the arresting officer searched the car pursuant to an illegal, warrantless stop.
A.     Standard of Review
          We review the trial court’s ruling on a motion to suppress evidence for abuse
of discretion. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a
suppression hearing, the trial court is the sole and exclusive trier of fact and judge of
the credibility of the witnesses and their testimony. Maxwell v. State, 73 S.W.3d 278,
281 (Tex. Crim. App. 2002). The appropriate standard for reviewing a trial court’s
ruling on a motion to suppress is bifurcated: we defer almost totally to the trial court’s
determination of historical facts and review de novo the court’s application of the
law. Id.; Guzman, 955 S.W.2d at 89.
B.      Analysis
          Appellant raises two separate issues in challenging the denial of his motion to
suppress. The first is whether the traffic stop was permissible under the Fourth
Amendment. The second is whether appellant had a reasonable expectation of
privacy, or standing, to object to the search. As these are distinct issues, each capable
of requiring suppression independent of the other, we review them seperately. See
Kothe v. State, 152 S.W.3d 54, 61–62 (Tex. Crim. App. 2004) (holding defendant can
challenge illegal seizure even if he or she cannot challenge subsequent search);
United States v. Roberson, 6 F.3d 1088, 1091 (5th Cir. 1993) (holding that passenger
of automobile cannot challenge search of automobile but can challenge stop).
          1.       Legality of Traffic Stop
          A traffic stop is a “seizure” within the meaning of the Fourth Amendment. 
Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). “A police officer’s
decision to stop an automobile is reasonable under the Fourth Amendment when the
officer has probable cause to believe the driver committed a traffic offense. An
officer’s observation of an actual violation of the traffic laws gives probable cause for
a traffic stop.” Moreno v. State, 124 S.W.3d 339, 346 (Tex. App.—Corpus Christi
2003, no pet.); see also Randle v. State, 89 S.W.3d 839, 842 (Tex. App.—Houston
[1st Dist.] 2002, pet. ref’d). In the present case, the traffic violation took place within
the officer’s view and was thus sufficient authority for an initial stop of the vehicle. 
Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005); Tex. Transp. Code Ann.
§ 543.001 (Vernon Supp. 2005).
          Appellant argues that the traffic stop was not valid under Texas law because
Officer Bryan did not have sufficient articulable facts to justify a Terry stop


 and he
did not observe appellant committing any traffic violations. Officer Bryan testified
that he stopped appellant based on the lack of a license plate light on the car and dirt
on the license plate that made the plate very difficult to read. Under the
Transportation Code a person commits an offense if his license plate has “a coating,
covering, or protective material that: distorts angular visibility or detectability; or
alters or obscures the letters or numbers on the plate, the color of the plate, or another
original design feature of the plate.” Tex. Transp. Code Ann. § 502.409(a)(7).


 
Additionally, the Transportation Code requires that “a tail lamp or separate lamp shall
be constructed and mounted to emit a white light that: illuminates the rear license
plate; and makes the plate clearly legible at a distance of 50 feet from the rear.” Tex.
Transp. Code Ann. § 547.322(f). An officer can arrest, without a warrant, a person
who commits either of the above mentioned violations. Tex. Transp. Code Ann.
§ 543.001.
          Appellant further complains that the minor traffic violations cited by Officer
Bryan were used as a pretext for the traffic stop. However, the Texas Court of
Criminal Appeals has held that a pretext stop is valid so long as an actual violation
occurs and law enforcement officials detain the person for that reason regardless of
the officer’s subjective reasons for the detention. Garcia v. State, 827 S.W.2d 937,
944 (Tex. Crim. App. 1992). 
          Continued detention of appellant during a traffic stop “must be based on
articulable facts which, taken together with rational inferences from those facts,
would warrant a person of reasonable caution in the belief that a continued detention
was justified, i.e., the detainee was or would soon be engaged in criminal activity.” 
Herrera v. State, 80 S.W.3d 283, 288 (Tex. App.—Texarkana 2002, pet. ref’d) (citing
Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)). Further detention of
appellant was based upon Officer Bryan’s observation of plastic bags containing pills
in the center console. This observation was the result of appellant’s independent
actions. We hold that there was no violation of appellant’s Fourth Amendment right
against illegal seizure. 
 
          2.       Warrantless Search
          Next we must consider whether appellant had a reasonable expectation of
privacy in order to object to the search. A defendant who asserts a Fourth
Amendment claim has the initial burden to establish, as an element of that claim, that
he personally has a legitimate expectation of privacy in the premises searched—that
the appellant has standing. State v. Klima, 934 S.W.2d 109, 111 (Tex. Crim. App.
1996). The State may raise the issue of standing for the first time on appeal. Id. We
review standing de novo, as it is a question of law. State v. Allen, 53 S.W.3d 731,
732 (Tex. App.—Houston [1st Dist.] 2001, no pet.).
          Appellant and Officer Bryan both testified that appellant was driving and his
girlfriend was a passenger. Appellant conceded that his girlfriend was the owner of
the car. The nonowner driver of a vehicle has no standing to contest a search when
the owner of the vehicle is present. Id. at 733. A nonowner driving when the owner
is present does not stand in the owner’s shoes and, thus, has no legitimate expectation
of privacy. Id. Additionally, it is undisputed that the owner of the vehicle, Amanda
Jordan, granted consent to search the vehicle. Under these factual circumstances,
appellant has no standing to assert a Fourth Amendment claim based on the search
of Amanda Jordan’s car. We hold that the trial court did not abuse its discretion in
overruling appellant’s motion to suppress.
          Appellant’s first point of error is overruled.
Sufficiency of the Evidence
          In his second point of error, appellant contends that the evidence is legally and
factually insufficient to support his conviction because the State did not provide
sufficient proof of affirmative links between appellant and the oxycodone. 
A.      Standards of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). 
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set aside the verdict only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 483 (Tex. Crim. App. 2004)). We must defer appropriately to the
fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d
at 481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole
judge of the weight and credibility accorded any witness’s testimony. Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The fact-finder alone determines what
weight to place on contradictory testimonial evidence, as it depends on the
fact-finder’s evaluation of credibility and demeanor. Id. at 408–09. In conducting
a factual sufficiency review, we must discuss the evidence that, according to
appellant, most undermines the verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003). 
B.      Analysis
          The Health and Safety Code provides, in pertinent part, that a person commits
the offense of possession of a controlled substance, a state jail felony, if the person
knowingly or intentionally possesses oxycodone, unless the person obtained the
substance directly from or under a valid prescription or order of a practitioner acting
in the course of professional practice. Tex. Health & Safety Code Ann.
§§ 481.102(3)(A), 481.115(a), (b) (Vernon 2003 & Supp. 2005).
          Possession is defined by the Health and Safety Code to be the “actual care,
custody, control, or management” of the substance in question. Tex. Health &
Safety Code Ann. § 481.002(38) (Vernon Supp. 2005). To support a conviction for
unlawful possession of a controlled substance, the State must prove both that the
accused exercised care, custody, control, or management of the substance and that he
knew that he possessed a controlled substance. Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995). The State must establish that the accused’s connection with
the drug was more than just fortuitous. Id. This is known as the affirmative links
rule. A defendant must be affirmatively linked with the drugs he allegedly possessed,
but this link need not be so strong that it excludes every other outstanding reasonable
hypothesis except the defendant’s guilt. Id. at 748. When a defendant is not in
exclusive possession of the place where the substance is found, the State must prove
additional independent facts and circumstances which affirmatively link the accused
to the contraband. Nhem v. State, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st
Dist.] 2004, no pet. h.).
          1.       Legal Sufficiency
          Courts have identified a non-exhaustive list of factors that may help to show
an affirmative link to a controlled substance.


 Id. at 699. Each case is examined on
its own facts, and a factor that contributes to the sufficiency of the evidence in one
case may be of little or no value in a different case. Id. It is not the number of
affirmative links present that is important, but rather the “logical force” that they
create to prove that the defendant committed the crime. Id. at 699–700. We must
examine, therefore, any factors that possibly link appellant to the oxycodone. 
          Because appellant was not alone in the car, he did not have exclusive control
of the premises. The evidence shows, however, that appellant had multiple
affirmative links to the oxycodone. Appellant alone entered the Katz Club, a known
drug “hot spot,” and stayed for no more than two minutes. According to Officer
Bryan, this behavior was indicative of a narcotics transaction and, thus, led to an
inference that appellant bought the oxycodone while in the club. The oxycodone was
found in an enclosed area that was easily accessible to the defendant. Officer Bryan
testified that, while looking through the console in the car, appellant turned his body
in a manner that Officer Bryan believed was intended to conceal the contents of the
console. Appellant acted “busted” when he realized Officer Bryan had seen the bags
containing pills inside the console. Both appellant’s attempt to conceal the contents
of the console and his expression could reasonably be interpreted to indicate that he
knew of the presence of oxycodone in the console. Additionally, appellant’s
statement that he knew to whom the drugs belonged and that he would take care of
it indicated that he knew of the presence of the drugs in the console. His statement
that the drugs did not belong to him has no bearing on whether he knew of their
presence. His knowledge of their presence and the fact that they were under his
control affirmatively linked the appellant to the oxycodone. 
          Viewing the evidence in the light most favorable to the verdict we hold that,
a rational finder of fact could have found beyond a reasonable doubt that appellant
knowingly and intentionally possessed oxycodone weighing less than one gram. 
          2.       Factual Sufficiency
          In arguing that the evidence was factually insufficient to support his
conviction, appellant relies upon his lack of exclusive control of the vehicle and
possible alternate explanations for his behavior during the traffic stop. Appellant
argues that his “busted” expression was the result of feelings of guilt for accidentally
exposing his girlfriend’s drugs rather than an indication of his own guilt. 
Additionally, he posits that his behavior of opening the console to reveal the drugs
would be “ludicrous” behavior for a person who knew the console contained drugs. 
          However, evidence is not factually insufficient merely because appellant offers
a different explanation for the facts. Coleman v. State, 113 S.W.3d 496, 502 (Tex.
App.—Houston [1st Dist.] 2003), aff’d, 145 S.W.3d 649 (Tex. Crim. App. 2004). 
The fact-finder alone determines what weight to place on contradictory testimonial
evidence, as it depends on the fact-finder’s evaluation of credibility and demeanor. 
Cain, 958 S.W.2d at 408–09. Nor does possession of a controlled substance need to
be exclusive to constitute a violation of the law. Nhem, 129 S.W.3d at 701. We hold
that the verdict is not so against the great weight and preponderance of the evidence
as to be manifestly unjust, and proof of guilt is not so weak as to undermine
confidence in the trial court’s determination. 
          Appellant’s second point of error is overruled.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).