Clarence Lee MORRISON, Appellant,

v.

The STATE of Texas, State.

No. 2–81–093–CR.

Court of Appeals of Texas,
Fort Worth.

March 31, 1982.

Rehearing Denied April 21, 1982.

Harry Louis Zimmermann, Burleson, Pate & Gibson, and Robert T. Baskett, Dallas, for appellants.

Timothy D. Eyssen, Dist. Atty., and Donald E. Maxfield, Asst. Dist. Atty., Wichita Falls, for appellees.

Before HUGHES, JORDAN and RICHARD L. BROWN, JJ.

OPINION

HUGHES, Justice.

The appellant, Clarence Lee Morrison, was convicted of criminal conspiracy to commit capital murder. A jury assessed his punishment at twenty years confinement in the Texas Department of Corrections.

We reverse and render.

The background facts are that the appellant was indicted in Colorado federal court for an offense involving an auto theft ring. Ronald Gail Adams was to testify against the appellant in the trial of that cause.

In 1978 a Wichita County grand jury delivered the following indictment:

In the Name and by the Authority of the State of Texas:

THE GRAND JURORS for the County of Wichita, State aforesaid, duly organized as such at the July Term, A.D. 1978 of the 30th District Court for said County, upon their oaths in said court present that Clarence Lee Morrison on or about the 12th day of May A.D. 1978 and anterior to the presentment of this indictment, in the County of Wichita and State of Texas, did then and there unlawfully with intent that a felony, to-wit: Capital Murder, be committed, the said Clarence Lee Morrison did then and there agree with Larry Miller that the said Clarence Lee Morrison and Larry Miller engage in conduct that would constitute said offense, to-wit: said Larry Miller would kill Ronald Gail Adams by shooting him with a gun in return for remuneration from the said Clarence Lee Morrison, and the said Clarence Lee Morrison performed an overt act in pursuance of said agreement, to-wit: taking the said Larry Miller to the selected location for the killing of Ronald Gail Adams, describing the automobile of Ronald Gail Adams to Larry Miller, showing Larry Miller photographs of Ronald Gail Adams against the peace and dignity of the State.

At appellant's trial on the conspiracy charge Larry Miller testified at length as to his having agreed to murder Adams in return for remuneration from the appellant.

The trial court charged the jury that Larry Miller was an accomplice.

It is the law in Texas that "a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense". V.A.C.C.P. art. 38.14.

The test to be used in determining if the accomplice testimony has been sufficiently corroborated is to eliminate the accomplice testimony from consideration, and if there is other incriminating evidence tending to connect the accused to the commission of the offense, there is sufficient corroboration. Hernandez v. State, 578 S.W.2d 731 (Tex.Cr.App.1979).

Under V.T.C.A. Penal Code Sec. 15.-02(a) "[a] person commits criminal conspiracy if, with intent that a felony be committed: (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and (2) he or one or more of them performs an overt act in pursuance of the agreement". Thus, the corpus delecti of conspiracy is the agreement and an overt act in furtherance thereof. McCann v. State, 606 S.W.2d 897 (Tex.Cr.App.1980).

In order to corroborate the testimony of Miller, the State introduced into evidence a tape recording of a conversation Miller had with the appellant. After Miller had been arrested for usage of a stolen credit card he supposedly told law enforcement officers of his involvement in the plan to murder Adams. He thereafter agreed to go to appellant's residence with a tape recorder attached to his body and talk to appellant about their plan to murder Adams. Two officers dropped Miller off near the appellant's alleged residence and monitored the recording of the conversation. Neither of the officers saw Miller actually talk to appellant; nor did they see anyone from their vantage point that they could positively identify as being appellant.

At trial Miller identified one of the voices on the tape as being appellant's. However, no one else was able to corroborate Miller's testimony as to this particular. Excluding Miller's testimony from our consideration, there is absolutely no identification of the voices on the tape recording other than that of Miller's voice. The tape recording,

therefore, would not tend to connect the appellant to the offense. Furthermore, even if it were sufficiently established that appellant's voice was recorded during the particular conversation with Miller, we find only the discussion of a plan. We find, on the tapes, no indication of any of the overt acts in furtherance of the conspiracy which are set forth in the indictment.

An investigator testified, over objection, that he had met with Miller and Miller admitted to him that he had been hired to kill Adams; that he was to use a pistol with a silencer attached; and that he was to get $5000.00 for doing it.

In order to introduce hearsay statements of a co-conspirator made to a third party outside the presence of the accused, the State must prove the statements were made in the furtherance of the conspiracy. *Denney v. State*, 558 S.W.2d 467 (Tex.Cr.App.1977, *cert. denied* 437 U.S. 911, 98 S.Ct. 3104, 57 L.Ed.2d 1142). "A confession or admission by co-conspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it." *Fiswick v. United States*, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946). This passage covers our situation. Thus, the investigator's testimony in this regard will not work to corroborate Miller's testimony.

The investigator also identified a photograph of Adams which Miller had allegedly given to him as the person Miller was supposed to murder. Adams himself identified the photograph as being one taken of him by the appellant's wife in the presence of the appellant. Excluding any identification of the photograph made by Miller, there is no evidence as to how Miller obtained possession of the photograph. The mere fact that Miller was in possession of a photograph of Adams is very tenuous as a means by which to connect the appellant with a conspiracy to murder Adams.

We have reviewed the remainder of the "corroborative" evidence and find that it goes to the verification of extraneous matters. The verification of these extraneous matters, although lending credibility to Miller, in no way tends to connect the appellant with a conspiracy to murder Adams.

We hold that there was insufficient corroboration of Miller's testimony. For this reason there is insufficient evidence to sustain appellant's conviction. Having determined that the evidence was insufficient to support conviction, we deem it unnecessary to consider the appellant's remaining grounds of error.

We note, only in passing, that Miller testified at two junctures that he never intended to kill Adams. This alone would appear to undermine the existence of an agreement which is a fundamental requisite of conspiracy. See *Odneal v. State*, 117 Tex.Cr.R. 97, 34 S.W.2d 595 (1931).

We reverse the judgment of the trial court and render a judgment of acquittal.

JORDAN, Justice, dissenting.

I respectfully dissent. The majority opinion correctly states the law that in the case of accomplice testimony, which must be corroborated, the test is to eliminate the accomplice testimony from consideration, and if there is other incriminating evidence tending to connect the accused to the commission of the offense, there is sufficient corroboration. *Hernandez v. State*, 578 S.W.2d 731 (Tex.Cr.App.1979). However, evidence corroborating an accomplice witness need not be sufficient, standing alone, to warrant conviction. *Dalrymple v. State*, 366 S.W.2d 576 (Tex.Cr.App.1963); *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr.App.1977). And see *Carrillo v. State*, 566 S.W.2d 902 (Tex.Cr.App.1978).

It is also recognized that evidence to corroborate an accomplice is sufficient if the cumulative weight is such that it tends to connect the accused with the offense. *Black v. State*, 513 S.W.2d 569 (Tex.Cr.App. 1974).

It is true that the tape recording of the conversation between the accomplice Miller and appellant was of poor quality, but after the proper predicate and explanations of the tape were introduced the tape was

properly admitted in evidence and was considered by the jury in their deliberations in the jury room. The credibility of the contents of the tape and the weight and value to be given its contents were matters for the sole consideration of the jury, the trier of the facts. It seems apparent that the jury thought there was sufficient evidence on the tape to link appellant in the conspiracy to murder Ronald Gail Adams, who was a potential witness in another criminal case against appellant. The jury had been charged on the law of accomplice testimony and the necessity for corroboration thereof. I think the tape, though poor in quality, was sufficient to supply the needed corroboration of at least the plan between Miller and appellant to murder Adams.

Miller, after his arrest, gave a photograph of Ronald Gail Adams to an investigator, who testified at the trial. This was a picture of Adams, taken in Mexico by Judy Morrison, wife of appellant, when appellant himself was present. While no one other than Miller testified as to how he came into possession of this photograph, it is obvious that he did come into possession of it, and certainly the jury, who heard all the testimony, was able to conclude, as it apparently did, that the picture of Adams was delivered by Morrison to Miller so as to identify the purported victim of the conspiracy to kill Adams. This is sufficient evidence of an overt act linking appellant to the plan to eliminate a witness scheduled to give damaging testimony against appellant in a forthcoming trial.

I would affirm the conviction and judgment of the trial court.