Opinion
issued January 27, 2011



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO.
01-09-00791-CR

————————————

christopher crenshaw, Appellant

V.

The State of
Texas,
Appellee



 



 

On
Appeal from the 185th District Court

Harris County, Texas



Trial
Court Cause No. 1172270

 



 

 

MEMORANDUM OPINION

          Appellant,
Christopher Crenshaw, appeals from a judgment sentencing him to life
imprisonment for capital murder.  See
Tex. Penal Code Ann. §
19.03(a)(2) (West Supp. 2010).  Appellant
pleaded not guilty to the jury.  The jury
found him guilty, and the trial court assessed his punishment.  In
five issues, appellant challenges the legal and factual sufficiency of the
evidence, the trial court’s refusal to grant a motion to suppress his oral
statements, the trial court’s refusal to grant a motion to suppress the
revolver, and the effectiveness of his trial counsel.  We conclude that the evidence is sufficient,
that the trial court did not abuse its discretion in refusing to grant the
motions to suppress, and that his trial counsel was not ineffective.  We affirm.

Background

          On the evening of November 29, 2007,
Carltrell Odom and two of his friends, Raul Duran and Vinny Lemus, were having
a conversation in the parking lot of Odom’s apartment complex when a group of
four young men approached and surrounded them. 
One yelled, “This is a [expletive] robbery,” and they pulled out guns,
ordering Odom and his friends to the ground. 
One of the men took Duran’s cell phone. 
As Odom moved to the ground, one of the attackers, Allan Nickerson,
struck Odom on the head with a handgun. 
Odom pushed the gun away him from his face and began running away.  Nickerson chased, shooting at him.  The first round missed, but the second landed
in Odom’s back.  With Odom on the ground,
Nickerson approached and fired a third round in the back of Odom’s head,
killing him.  A black sedan approached,
and the four men entered and drove away.

          Upon learning that Duran’s cell phone
had been stolen in the robbery, the police tracked the phone to Nickerson’s
home.  Nickerson agreed to go to the
police station to discuss the previous night’s incident.  Nickerson admitted being present at the scene
of the robbery and indicated that appellant, age fifteen, had been with
him.  Before being transported to the
police station, Nickerson directed the police to appellant’s apartment complex,
where they arrived at approximately 4:00 a.m. 
Once there, Sergeant Huynh spoke with Michelle Crenshaw, appellant’s
mother, who was outside sitting in her car getting ready to leave for
work.  Sergeant Huynh explained that he
was conducting a follow-up in a murder investigation.  He asked if appellant was home and if he
could speak to him.  She answered
affirmatively, handed her keys to Sergeant Huynh, and directed him to her
apartment.  Sergeant Huynh gave the keys
to his partner, Sergeant Newcomb. 
Sergeant Newcomb, who was dressed in a suit, entered the apartment and
spoke with appellant, who had been sleeping in one of the bedrooms that he
shared with his brother.  Sergeant
Newcomb was accompanied by three uniformed officers.  After speaking to appellant, Sergeant Newcomb
asked appellant and his brother to come with them to the homicide office to
talk about the investigation.  Both
appellant and his brother agreed to talk and accompany the police.  Appellant’s mother also consented to her sons
accompanying the police to the police station.

          After handing the key to Sergeant
Newcomb, Sergeant Huynh returned to speak with appellant’s mother.  At 4:15 a.m., she signed a written consent
form authorizing the police to search her apartment.  After obtaining the written consent, Sergeant
Huynh conducted a search of the bedroom shared by appellant and his brother
where he recovered a revolver and some marijuana inside a shoebox.  Although Nickerson had not mentioned that
appellant had the revolver, at this point, the police already suspected that a
revolver might have been used to kill Odom as there were no bullet casings
found at the crime scene.  Later testing
revealed that this was the same revolver used to kill Odom.  

          Appellant was handcuffed as required
by police department policy and was transported in a marked patrol car to the
Harris County Criminal Justice Center.  The
police later testified that at this point, they did not have probable cause and
appellant was not under arrest. 
Nevertheless, they brought appellant to a magistrate judge to have the Miranda-based warnings read to appellant
in case he ended up making an incriminating statement.  At approximately 5:07 a.m., at the requested
of the magistrate judge, the police officers removed appellant’s handcuffs.  The magistrate judge began by informing
appellant that he had “been accused of the offense of capital murder
. . . on a complaint made by the State of Texas.”  After being read the Miranda-based warnings, appellant indicated that he understood his
rights.

          Appellant was again handcuffed.  As they were walking out of the Criminal
Justice Center, appellant began, without prompting, to tell Sergeant Roberts
what happened.  Sergeant Roberts had to
stop appellant to tell him to wait until they were in a position to record his
statement.  Appellant was transported in
the same marked patrol car to the homicide office where he was seated in an
interrogation room and his handcuffs were removed.  When Sergeant Roberts entered the
interrogation room, but before he began recording, appellant again started,
without prompting, to tell what had happened only to again be stopped.

          At 5:28 a.m., Sergeant Roberts and his
partner began interviewing appellant for an initial session, which lasted
fifty-five minutes.  Early on, Sergeant
Roberts told appellant that two of his “buddies” who had been with him the
previous night were down the hall, already telling the police a lot.  Appellant admitted that he and four others
had planned the robbery the day before because they “needed the money
. . . to put something in our stomach[s].”  The previous night, one person waited in the
car while appellant and three others approached Odom, Vinny, and Lemus.  Appellant admitted that the revolver found in
the shoebox was the gun that the shooter used and that it was placed in his
backpack after the shooting.  Appellant
also admitted that he brought the revolver, already loaded, that night.  Appellant identified the shooter by a false
name.  

          Appellant remained in the
interrogation room for the remainder of the day where he was provided with
food, drink, and opportunities to use the bathroom.  There is no evidence that, during the fifteen
hours in between the two interview sessions, appellant was ever informed that
he was not under arrest and that he was free to leave.  Similarly, there is no evidence that
appellant ever asked to leave.

          After completing the initial interview
session, Sergeant Roberts met with the other investigators and learned that, in
a simultaneously conduced interview, Allan Nickerson had given a more accurate
account of what happened during the incident. 
As the police were preparing to transport appellant to juvenile
detention, Sergeant Roberts mentioned to appellant that Nickerson had told them
the truth.  Appellant looked down and
said he needed to talk with Sergeant Roberts and his partner again so he could
tell them the truth about what really happened. 
At 9:38 p.m., Sergeant Roberts and his partner intervied appellant for a
second session, which lasted fifteen minutes. 
During the second interview session, appellant restated what had
happened the previous night, this time providing the shooter’s real name.

Sufficiency of the Evidence

In his first and second issues,
appellant challenges the evidence as legally and factually insufficient to
support his conviction for capital murder as a party.  In particular, appellant challenges the
evidence for the predicate offense of capital murder by claiming that the
evidence fails to show that the shooter intended to kill Odom.  Appellant also challenges the evidence
establishing his guilt as a party by asserting the evidence fails to show he
should have anticipated a murder to result from the robbery.

A.      Standard of Review

This Court now reviews
both legal and factual sufficiency challenges using the same standard of
review.  Ervin v. State, No. 01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, pet.
filed) (construing majority holding of Brooks
v. State, 323 S.W.3d 893,
912, 926 (Tex. Crim. App. 2010)).  Under
this standard, evidence is insufficient to support a conviction if considering
all the record evidence in the light most favorable to the verdict, no rational
factfinder could have found that each essential element of the charged offense
was proven beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979); In re Winship, 397 U.S.
358, 361, 90 S. Ct. 1068, 1071 (1970); Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750
(Tex. Crim. App. 2007).  Viewed in the light most favorable to the
verdict, the evidence is insufficient under this standard in two
circumstances:  (1) the record contains
no evidence, or merely a “modicum” of evidence, probative of an element of the
offense; or (2) the evidence conclusively establishes a reasonable doubt.  See
Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 &
n.11; Laster, 275 S.W.3d at
518; Williams, 235 S.W.3d at
750.  Additionally, the evidence is
insufficient as a matter of law if the acts alleged do not constitute the
criminal offense charged.  Williams, 235 S.W.3d at 750.

If an
appellate court finds the evidence insufficient under this standard, it must
reverse the judgment and enter an order of acquittal.  See Tibbs
v. Florida, 457 U.S. 31, 41,
102 S. Ct. 2211, 2218 (1982).  An appellate court determines whether the necessary inferences are
reasonable based upon the combined and cumulative force of all the evidence
when viewed in the light most favorable to the verdict.  See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007)).  In viewing the
record, direct and circumstantial evidence are treated equally; circumstantial
evidence is as probative as direct evidence in establishing the guilt of an actor,
and circumstantial evidence alone can be sufficient to establish guilt.  Id.
(citing Hooper, 214 S.W.3d at
13).  An appellate court presumes that
the factfinder resolved any conflicting inferences in favor of the verdict and
defers to that resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793;
Clayton, 235 S.W.3d at 778.  An
appellate court also defers to the factfinder’s evaluation of the credibility
of the evidence and weight to give the evidence.  See Williams, 235 S.W.3d at 750.

B.      Applicable
Law for Capital Murder and Law of Parties

A person commits capital murder
if, in the course of committing a robbery, he intentionally causes the death of
an individual.  See Tex. Penal Code Ann.
§§ 19.02(b)(1) (West 2003), 19.03(a)(2); Sholars v. State, 312 S.W.3d 694, 695 n.1 (Tex. App.—Houston [1st
Dist.] 2009, pet. ref’d).  A person
commits robbery if, in the course of committing theft and with intent to obtain
or maintain control of the property, he intentionally, knowingly, or recklessly
causes bodily injury to another; or intentionally or knowingly threatens
another with, or places another in fear of, imminent bodily injury or
death.  Tex.
Penal Code Ann. § 29.02(a) (West 2003); Sholars, 312 S.W.3d at 703.

Under the law of parties, a person may be held criminally
responsible for the conduct of another who is acting as a co-conspirator.  See Tex. Penal Code Ann. § 7.02(b) (West
2003).  A person is guilty as a party to
a felony offense committed by a co-conspirator if (1) the offense committed by
the co-conspirator is a felony, (2) the co-conspirator committed the offense
during an attempt to carry out the conspiracy, (3) the co-conspirator committed
the offense in furtherance of the unlawful purpose of the conspiracy, and (4)
the defendant should have anticipated that the offense would result from the
carrying out of the conspiracy.  See id.;
Love v. State, 199 S.W.3d 447, 452
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  A criminal conspiracy forms when two or more
persons agree to engage in conduct that would constitute a felony so long as
the agreeing parties actually intend that a felony be committed and one of them
later commits an overt act in pursuance of their agreement.  Tex.
Penal Code Ann. § 15.02(a) (West 2003). 
The
law of parties requires proof that the other person committed the predicate
offense for which the defendant is held vicariously responsible.  See id. § 7.02(a)–(b).

C.      Predicate Offense

Appellant contends that the
evidence for the predicate offense of capital murder is legally and factually
insufficient to show that the shooter, Nickerson, intended to kill Odom.  Specifically,
appellant asserts that the only visual description of the shooting was provided
by Lemus’s testimony that he saw the shooter fire at Odom from ten to fifteen
yards away.  Lemus saw this despite lying
face down on the pavement at night, looking up with a gun pointed at the back
of his head while the men yelled at him. 
Appellant also purports that this evidence is countered by Duran’s
statement to the police on the night of the robbery that he had not seen any
guns.  Appellant does not challenge any
of the other elements for the predicate offense of capital murder.

While Lemus’s testimony may be the
only evidence providing a visual description of the shooting, other evidence
establishes that Nickerson used a revolver to kill Odom.  The medical examiner who performed the
autopsy provided expert testimony that Odom died as a result of the bullet
wound to his back and head.  Another
expert testified concerning ballistic analysis that connected the spent bullet
casings found in the revolver to the bullets recovered from Odom’s body and the
bullet fragments found at the scene. 
Furthermore, although he did not see a gun, Duran explained that on the
night of the robbery he was face down and felt what appeared to be firearm
placed on his head.

Evidence that Nickerson shot
repeatedly at Odom with a firearm shows that Nickerson intended to kill
him.  See
Tex. Penal Code Ann. §
1.07(a)(17) (West Supp. 2010) (a firearm is a deadly weapon); Sholars, 312 S.W.3d at 703 (“intent to
kill may be inferred from the use of a deadly weapon”).  This inference is bolstered by evidence that,
after the first bullet missed, Nickerson fired a second round striking Odom in
the back and causing him to fall to the ground. 
Cf. Dominguez
v. State, 125
S.W.3d 755, 762 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (holding evidence permitted inference of
intent to kill when defendant and other members of his gang planned to rob
person walking alone at night, and, in course of theft or attempted theft of
complainant, defendant retrieved loaded shotgun from car trunk and shot
complainant in abdomen, resulting in complainant’s death).  Finally, the evidence that Nickerson
approached Odom and fired a third bullet at close range into the back of Odom’s
head creates a presumption that Nickerson intended to cause Odom’s resulting
death.  See Sholars, 312 S.W.3d
at 703 (“When a deadly weapon is fired at close range, and death results, the
law presumes an intent to kill.”).  We conclude
that the jury could have rationally determined that the evidence proved beyond
a reasonable doubt the predicate offense of capital murder.

D.      Guilt as a Co-Conspirator Party

Appellant contends that the
evidence is also legally and factually insufficient to show that he should have
anticipated that, as a result of carrying out a conspiracy to commit robbery, a
co-conspirator would intentionally cause the death of one of the people being
robbed.  Appellant does not challenge any
of the other elements for establishing his guilt as a co-conspirator party.

In his oral statement, appellant
acknowledged that, in preparation for carrying out the robbery, he provided
Nickerson with the revolver.  In addition
to providing a gun to Nickerson, testimony by Duran and Lemus establishes that,
during the robbery, appellant was also armed with another gun.  The jury could have rationally determined
that appellant should have anticipated that an intentional murder would result from
carrying out a conspiracy to commit robbery armed with loaded guns.  See
Love, 199 S.W.3d at 453 (“Evidence
that a defendant knew his co-conspirators might use guns in the course of the
robbery can be sufficient to demonstrate that the defendant should have
anticipated the possibility of murder occurring during the course of the
robbery.”); Flores v. State, 681
S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984) (evidence that defendant
knew co-defendant was armed supported rational inference that shooting could
have been anticipated), aff’d, 690
S.W.2d 281 (Tex. Crim. App. 1985).  We
hold the evidence is sufficient to establish appellant’s guilt as a
co-conspirator party.

Corpus Delicti

In the remaining portion of his first
and second issues, appellant also challenges the evidence, under the corpus
delicti rule, as inadequate to support his conviction for capital murder as a
party.  In particular, appellant contends
that there is no evidence, independent of his oral statement, tending to
establish the existence of a conspiracy to commit robbery and appellant’s
involvement in the conspiracy or in the robbery.

A.      Standard
of Review

Under the corpus delicti rule, a
defendant’s own extrajudicial confession is insufficient to sustain his
conviction for an offense unless it is corroborated by independent evidence
tending to establish the fact that the offense in question has been committed
by someone.  Salazar v. State, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002).  The independent, corroborating evidence need
only make the fact of the crime more probable than it would otherwise be.  See
Rocha v. State, 16 S.W.3d 1, 4–5 (Tex. Crim. App. 2000).  It is
not required that the independent, corroborating evidence meet the legal
sufficiency test announced in Jackson.  See id.  Once the fact that the offense was committed
by someone is corroborated by independent evidence, a defendant’s own
extrajudicial confession, even standing alone, is sufficient to tie him to that
crime.  See Salazar, 86 S.W.3d at
644 (“the corpus delicti rule . . . does not also require any independent evidence
that the defendant was the criminal culprit”) (emphasis omitted).  

B.      Conspiracy
to Commit Robbery

Appellant asserts that the evidence is
inadequate under the corpus delicti rule because there is no independent,
corroborating evidence tending to show the existence of a conspiracy to commit
robbery.  In the case of conspiracy, independent evidence must corroborate the
existence of an agreement and of an overt act pursuant to the agreement.  Morrison
v. State, 631 S.W.2d 242, 243 (Tex. App.—Fort Worth 1982, pet. ref’d)
(citing Tex. Penal Code Ann. §
15.02(a)); see Williams v. State, 646
S.W.2d 221, 222 (Tex. Crim. App. 1983) (“corpus delicti of conspiracy must
contain a showing of agreement to
commit a crime”) (emphasis in original). 


Since an agreement between parties to act together in common
design can seldom be proven by words, the actions of the parties, shown by
direct or circumstantial evidence, can establish the existence of an agreement
to commit an offense.  Tex. Penal Code Ann. § 15.02(b)
(agreement to commit crime may be inferred from acts of parties); see Miller v. State, 83 S.W.3d
308, 314 (Tex. App.—Austin 2002, pet ref’d); Wygal v. State, 555 S.W.2d
465, 469 (Tex. Crim. App. 1977) (circumstantial evidence sufficient to show
guilt as party).

Testimony by Lemus and Duran
independently corroborates the existence of agreement to commit robbery between
the men who robbed them and of an overt act. 
Their testimonies establish that they were approached by a group of four
men who, at the same moment, all brandished their guns after one of them
announced that they were engaging in a robbery. 
The coordination of their conduct corroborates that they were acting
pursuant to a prior agreement.  See Miller, 83 S.W.3d at 314; Wygal, 555 S.W.2d at 469.  

C.      Appellant’s
Involvement in the Conspiracy

Appellant asserts that the
evidence is also inadequate under the corpus delicti rule because there is no
independent, corroborating evidence tending to show his involvement in the
conspiracy to commit robbery.  Appellant
explains that, since the State charged him as a party to the murder, it “was
thus required to present independent evidence of [his] involvement in the
conspiracy.”

Contrary to
appellant’s claim, as it applies to conspiracy, there is no corpus delicti
requirement of independent, corroborating evidence tending to show a person’s
involvement in the conspiracy.  See Morrison,
631 S.W.2d at 243 (must show agreement and overt act); Williams, 646 S.W.2d at 222 (must show agreement).  A person’s participation as one of the members
of that conspiracy may be established by his extrajudicial statement
alone.  See Tex. Penal Code Ann.
§ 15.02(a); Salazar, 86 S.W.3d at
644. 

  
Moreover, independent evidence establishes appellant’s involvement in
the conspiracy.  The evidence reveals
that the revolver used to kill Odom was found in appellant’s bedroom a few
hours after the murder-robbery occurred. 
See Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (in
determining whether person participated as party, courts may look to events
occurring before, during, and after commission of offense).  We hold the evidence of appellant’s
commission of capital murder as a co-conspirator party meets the requirements
of the corpus delicti rule.  We overrule
appellant’s first two issues.

Motions to Suppress

          In his third
and fourth issues, appellant asserts that the trial court abused its discretion
in denying his motion to suppress his oral statements and his motion to
suppress the revolver seized from his bedroom.

A.      Standard of Review

“A trial court’s ruling on a motion to
suppress, like any ruling on the admission of evidence, is subject to review on
appeal for abuse of discretion.”  Amador v. State, 275 S.W.3d 872, 878
(Tex. Crim. App. 2009); see Swain v. State, 181 S.W.3d 359, 365 (Tex.
Crim. App. 2005).  “In reviewing a trial
court’s ruling on a motion to suppress, appellate courts must view all of the
evidence in the light most favorable to the trial court’s ruling.”  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).  In evaluating whether a trial court’s ruling
on a motion to suppress is supported by the record, we consider only evidence
presented at the hearing on that motion. 
Hardesty v. State, 667 S.W.2d
130, 133 n.6 (Tex. Crim. App. 1994); DeLeon
v. State, 985 S.W.2d 117, 199 (Tex. App.—San Antonio 1998, pet.
ref’d).  Where the trial court ruled on a motion to suppress but did
not make explicit findings of fact, we imply those findings that are both supported
by the evidence, viewed in the light most favorable to the trial court’s
ruling, and necessary to uphold the trial court’s ruling.  Orr v.
State, 306 S.W.3d 380, 398 (Tex. Crim. App. 2010).

          We give almost complete deference to a
trial court’s ruling if it involves either a question of historical fact or a
mixed question of law and fact that turns on an evaluation of witness
credibility and demeanor.  See St.
George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (on question of
admission of evidence, trial court is sole finder of fact, including determination
of witness credibility and weight given to evidence); State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (same
deference to application of law to fact questions) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  In contrast, we review de novo questions of
law and all other mixed questions of law and fact.  See
Guzman, 955 S.W.2d at 89. 

B.      Admissibility of Appellant’s Extrajudicial
Statement

          The
availability of grounds for excluding a juvenile defendant’s extrajudicial
statement largely depends upon whether that statement stemmed from a custodial
interrogation.  A juvenile defendant’s
statement stemming from a custodial interrogation is excludable if a magistrate
judge failed to first properly informed him of his Miranda-based rights of silence and attorney assistance.  See
Tex. Fam. Code Ann. §
51.095(a)(2), (a)(5)(A) (West 2008); In
re L.M., 993 S.W.2d 276, 290–91 (Tex. App.—Austin 1999, pet. denied).  Specifically, a magistrate judge must warn a
juvenile defendant that (1) he has the right to remain silent and not make any
statement at all but that any statement that he does make may be used in
evidence against him, (2) he has the right to have an attorney present to
advise him either prior to any questioning or during the questioning, (3) he
has a right to have an attorney appointed to counsel with him before or during
any interviews with peace officers or attorneys representing the state if he is
unable to employ an attorney, and (4) he has a right to terminate the interview
at any time.  Tex. Fam. Code. Ann. § 51.095(a)(1)(A).  Even where a magistrate judge properly read
those rights to a juvenile defendant, his statement may still be excluded if he
did not waive each right knowingly, intelligently, and voluntarily.  See
Tex. Code Crim. Proc. Ann. art.
38.22 § 3(a)(2) (West 2005). 
Conversely, if a juvenile defendant’s confession did not stem from a
custodial interrogation, it may be admitted regardless of whether the warning
was first read to the juvenile.  Martinez v. State, 131 S.W.3d 22, 32
(Tex. App.—San Antonio 2003, no pet.). 
In any case, a defendant’s statement is excludable if it was not made
freely and voluntarily.  Tex. Code Crim. Proc. Ann. art. 38.21 (West
2005).

          Appellant
makes three arguments supporting his challenge to the denial of the motion to
suppress his oral statements:  (1) he
claims that he was in custody at the time he made the oral statements; (2) he
claims that he did not properly waive his rights; and (3) he claims that he did
not freely and voluntarily speak with the police. 

1.       Custody

          A person is in custody if a
reasonable, innocent person under the circumstances would believe that his
freedom of movement was restrained to the degree associated with formal
arrest.  Herrera v. State, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007); see In re D.J.C., 312 S.W.3d 704, 712 (Tex. App.—Houston [1st Dist.] 2009,
no pet.) (child
is in custody if, under objective circumstances, reasonable child of same age
would believe freedom of movement was significantly restricted).  Circumstances that might indicate a seizure
include “the
threatening presence of several officers, the display of a weapon by an
officer, some physical touching of the person of the citizen, or the use of
language or tone of voice indicating that compliance with the officer’s request
might be compelled.”  Kaupp v. Texas, 538 U.S. 626, 630, 123
S. Ct. 1843, 1846 (2003).  A person is not in custody if he
“voluntarily accompanies police officers, who are then only in the process of
investigating a crime, to a certain location, and he knows or should know that
the police officers suspect he may have committed or may be implicated in
committing the crime.”  Turner v. State, 252 S.W.3d 571, 580
(Tex. App.—Houston [14th Dist.] 2008, pet ref’d) (citing Dancy v. State, 728 S.W.2d 772, 778–79 (Tex. Crim. App.
1987)).  “Once the circumstances show the
person is acting upon the invitation, urging or request of police officers, and
not the result of force, coercion or threat, the act is voluntary and the
person is not then in custody.”  Id. (citing Livingston v. State, 739 S.W.2d 311, 327 (Tex. Crim. App.
1987)).  However, an initially consensual
encounter with police can be transformed into a custodial detention where the
police procedures become qualitatively and quantitatively so intrusive with
respect to a person’s freedom of movement. 
Kaupp, 538 U.S. at 631, 123 S.
Ct. at 1847; Hayes v. Florida, 470
U.S. 811, 815–16, 105 S. Ct. 1643, 1646 (1985).

In Kaupp
v. State, the U.S. Supreme Court held that a seventeen-year-old juvenile
defendant was in police custody despite initially and apparently
consenting.  Kaupp, 538 U.S. at 627, 629, 632, 123 S. Ct. at 1844–45, 1847.  In Kaupp,
the police, acting without a warrant, nevertheless decided to bring Kaupp into
the police station to confront him with accusations made by another party to
the murder.  Id. at 628, 123 S. Ct. at 1845. 
In the early hours of the morning, the police went to Kaupp’s home.  Id.  After obtaining Kaupp’s father’s consent
to enter the house, at least three police officers entered Kaupp’s bedroom and
awoke him with a flashlight.  Id. 
One of the officers then stated, “We need to go and talk.”  Id.  Kaupp replied, “Okay.”  The Supreme Court held that, under the
circumstances, Kaupp’s reply, “Okay,” did not indicate voluntary consent, but
rather a mere submission to a claim of lawful authority.  Id.
at 631, 123 S. Ct. at 1846.  The Court
explained that the police officer’s instruction, “We need to go and talk,”
presented no option but “to go.”  Id. at 631, 123 S. Ct. at 1847.

After saying “Okay,” Kaupp was then
handcuffed and led shoeless, dressed only in underwear and t-shirt to a patrol
car.  Id.
at 628, 123 S. Ct. at 1845.  Before
taking him to talk, the police first took Kaupp to the crime scene where the
victim’s body had just been found.  Id. 
After that, Kaupp was read his Miranda
rights and within minutes of interrogation, admitted his part in the
crime.  Id. at 628–29, 123 S. Ct. at 1845. 
The Supreme Court explained that “[i]t cannot seriously be suggested
that when the detectives began to question Kaupp, a reasonable person in his
situation would have thought he was sitting in the interview room as a matter
of choice, free to change his mind and go home to bed.”  Id.
at 632, 123 S. Ct. at 1847.

Appellant’s situation is unlike Kaupp in that the record here fails to
show that he was undressed or that the officers made statements to pressure him
into going with them.  Like Kaupp, however, appellant left his house
in the early morning hours after four police officers entered his house with
his mother’s consent.  Also similar to Kaupp, appellant was handcuffed after
agreeing to be transported to the police station to make an oral
statement.  Additionally, Sergeant
Roberts testified that, in accordance with police department policy, appellant
was temporarily placed in handcuffs while being transported from his home to
the magistrate judge and again on the way to the homicide office.  In Turner,
the Fourteenth Court of Appeals distinguished the facts before it from those in
Kaupp by observing that the Turner
had been placed in handcuffs only after consenting to police transport and that
he had been repeatedly told that he was not under arrest and that the handcuffs
were only for safety purposes.  See Turner,
252 S.W.3d at 582.  However, like Kaupp and unlike Turner, here, there is no showing appellant was ever told that he
was not under arrest or that he was handcuffed only pursuant to police policy.

          We conclude
that based on the totality of the circumstances, a reasonable, innocent
fifteen-year-old person would believe he was in custody when he made the
statement to the officers at the police station.  These circumstances include the
following:  (1) four police officers
arrived at and entered appellant’s house at four in the morning; (2) the officers
seized marijuana and a revolver in appellant’s bedroom, which was the
consistent with the type of weapon believed to have been used in the offense;
(3) appellant was handcuffed for over an hour while being transported in a
marked patrol car to the police station; and (4) a magistrate told appellant
that he was “accused
of the offense of capital murder . . . on a complaint made by the
State of Texas.”  Based on the totality
of the circumstances, we determine that a reasonable, innocent fifteen-year-old, even though initially
consenting to transport and to making a statement, would believe that he was no
longer free to change his mind and leave after being handcuffed and told by a
judge that he had been accused of capital murder.  See
Kaupp, 538 U.S. at 632, 123 S. Ct. at
1847; D.J.C., 312 S.W.3d at 712.  We conclude that appellant was in custody
when he made his oral statement. 
Therefore, we next address appellant’s complaint that he did not waive
his rights, which was required for his custodial statements to be admissible at
the trial.  

2.       Waiver

          For a
defendant’s statement that stems from a custodial interrogation to be
admissible, he must knowingly, intelligently, and voluntarily waive his right
to remain silent, to have an attorney present, to have an attorney appointed if
indigent, and to terminate a police interview. 
Tex. Code Crim. Proc. Ann. art.
38.22 § 3(a)(2); Joseph v. State, 309
S.W.3d 20, 23 (Tex. Crim. App. 2010). 
The State bears the burden of proving valid waiver by a preponderance of
the evidence.  Joseph, 309 S.W.3d at 23 (citing Colorado v. Connelly, 479 U.S. 157, 107 S. Ct. 515 (1986)). 

          In evaluating
whether there has been a valid waiver, a court must consider the totality of the
circumstances including the defendant’s experience, background, and
conduct.  See id. (quoting Moran v. Burbine, 475 U.S. 412, 421, 106
S. Ct. 1135, 1141 (1986)).  A waiver is
voluntary if it is the product of a free and deliberative choice rather than
intimidation, coercion, or deception.  See id. 
A waiver is knowing and intelligent if it is made with full
awareness of both the nature of the right being abandoned and the consequences
of the decision to abandon it.  See id.  

          Appellant
contends that he did not explicitly waive his rights.  There is no requirement, however, that a
defendant explicitly waive his rights. 
An implicit waiver can be inferred from the actions and words of the
person being interrogated.  See id.
(quoting North Carolina v. Butler,
441 U.S. 369, 373, 99 S. Ct. 1755, 1760 (1979)); see also Marsh v. State,
140 S.W.3d 901, 911 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d)
(construing Tex. Fam. Code Ann. §
51.095 consistently with Tex. Code Crim.
Proc. Ann. art. 38.22).

          Appellant’s
sole argument that he did not knowingly and intelligently waive his rights is
that he had been roused by the police at an early hour.  He contends that this may have impaired his
awareness of the circumstances of his interrogation.  The evidence, however, does not support this
argument.  No evidence was introduced to
show that lack of sleep affected his understanding.  To the contrary, appellant repeatedly stated
that he understood his rights despite having been woken up early.  Moreover, missing a few hours of sleep does
not rise to the level of impairment necessary to render a waiver invalid.  Cf.
Davis v. State, 313 S.W.3d 317, 336 (Tex. Crim. App. 2010) (defendant
validly waived Miranda-based rights
despite having “just been through multiple days without sleep [and] prolonged
drug use”).     

          Appellant
contends that he did not voluntarily waive his rights because he was
“explicitly directed to waive” those rights when Sergeant Robert said, “Chris
tell me what went on tonight.”  An
examination of the totality-of-the-circumstances shows that appellant was not
directed to waive his rights.  See Joseph,
209 S.W.3d at 23 (quoting Moran, 475
U.S. at 421, 106 S. Ct. at 1141).

          The record
shows that soon after appellant was informed of his rights, he began, without
instigation, to attempt to tell Sergeant Roberts his side of the story.  At that point, Sergeant Roberts had to stop
appellant because he was not in a position to record appellant’s
statement.  Once Sergeant Roberts began
electronically recording the conversation, he was then ready to take
appellant’s statement.  It was at this
point that the sergeant gave appellant the instruction to “tell [him] what went
on.”  Interpreted in context, the trial
court could have concluded that Sergeant Roberts’s statement was a prompt to
continue, informing appellant he was now prepared to take appellant’s
statement.  We hold that the
totality-of-the-circumstances supports the trial court’s finding that appellant
knowingly, intelligently, and voluntarily waived his rights.  Cf.
Crissam v. State, 403 S.W.2d 414, 416 (Tex. Crim. App. 1966) (incriminating
statement admissible where defendant persisted in desire to make statement even
after being taken before magistrate and being advised of his right to remain
silent and where defendant had not been subject to prolonged interrogation); Turner, 252 S.W.3d at 582 (valid waiver
despite no express waiver where defendant was properly advised of rights,
acknowledged understanding rights, and proceeded to answer officer’s questions).

3.       Voluntariness of Statement

          A defendant’s
statement is excludable if it was not made freely and voluntarily.  Tex.
Code Crim. Proc. Ann. art. 38.21. 
A statement given by a juvenile defendant must be deemed involuntarily
if the circumstances indicate that defendant was threatened, coerced, promised
some consideration in exchange for his confession, or incapable of
understanding his rights and the warnings given.  See
Darden v. State, 629 S.W.2d 46, 51 (Tex. Crim. App. 1982).  A statement is also involuntary if there was
“official, coercive conduct of such a nature that any statement obtained
thereby was unlikely to have been the product of an essentially free and
unconstrained choice by its maker.”  Alvarado v. State, 912 S.W.2d 199, 211
(Tex. Crim. App. 1995).  Courts evaluate
the voluntariness of a statement within the totality-of-the-circumstances.  See
Delao v. State, 235 S.W.3d 235, 239
(Tex. Crim. App. 2007); Wyatt v. State,
23 S.W.3d 18, 23 (Tex. Crim. App. 2000); Creager
v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997).  

          Whether a
defendant made a statement freely and voluntarily is a mixed question of law
and fact.  Garcia v. State, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000).  In determining that appellant made his
statement freely and voluntarily, the trial court found credible and relied
upon Sergeant Roberts’s testimony. 
Accordingly, we give almost complete deference to the trial court’s
determination that appellant made his statement freely and voluntarily.  See St. George, 237
S.W.3d at 725; Ross, 32 S.W.3d at
856.

          Appellant
complains that        law enforcement
employed deceptive tactics in order to induce him to give his statements.  The police told appellant that his “buddies”
had incriminated him.  Such ordinary
techniques are not the type of “third-degree” techniques that would render a
defendant’s statement involuntary.  See Estrada v. State, 313 S.W.3d 274,
297 (Tex. Crim. App. 2010) (statement voluntary despite interrogation
techniques of repeated accusations of criminal conduct and assertions that
Estrada was lying).  Moreover, “a
misrepresentation relating to an accused’s connection to the crime is the least
likely to render a confession involuntary.” 
Weaver v. State, 265 S.W.3d
523 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d)) (citing Green v. State, 934 S.W.2d 92, 99 (Tex.
Crim. App. 1996)).

          The
statements by appellant confirm he was voluntarily speaking to the police.  At the beginning of the second interview,
appellant was asked, “[Y]ou want to tell us what really happened, is that
correct?”  Appellant answered, “Yes
sir.”  Similarly, at the end of the
second interview, appellant maked clear he was to not being coerced:

[Sergeant
Roberts]:   Ok, Chris, has anybody beat
you up or threatened to hurt you to get you to make this statement?

 

[Appellant]:              No sir

 

[Sergeant
Roberts]:   Have [you] been treated good
while you were here?

 

[Appellant]:              Yes

 

[Sergeant
Roberts]:   [We] [l]et you go to the
bathroom, got you something to drink, something to eat?

 

[Appellant]:              Yes sir

[Sergeant
Roberts]:   Ok, so . . . we’ve treated you
pretty reasonably?

[Appellant]:              Yes sir

The record, therefore, supports the trial court’s finding
that appellant’s statement was freely and voluntarily made.  Cf.
Gomes v. State, 9 S.W.3d 373, 377–80 (Tex. App.—Houston [14th Dist.] 2010,
pet. ref’d) (although defendant lacked experience dealing with police, did not
realize she was free to leave, and was tired and hungry, defendant’s statement
was freely and voluntarily made where defendant had basic reasoning abilities
and police made no threats or promises).

          We also note that appellant raises for
the first time on appeal the argument that his statements should have been
suppressed because one of the voices on the interrogation is unknown.  See
Tex. Fam. Code. Ann. §
51.095(5)(C).  Since this complaint does
not comport with any ground raised in his motion to suppress, we do not reach
this issue as it is not preserved for appeal. 
See Tex R. App. Proc. 33(1)(a); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  We overrule appellant’s third issue.

C.      Admissibly of Revolver 

          In his fourth
issue, appellant asserts that the trial court abused its discretion in denying
his motion to suppress the revolver seized from a shoe box inside his
bedroom.  Appellant bases this upon his
contentions that his mother had insufficient control over his bedroom to
effectively consent to a search and that she consented to the search only after
the search had already begun.  We note
that the trial court did not enter any explicit findings of fact in rejecting
appellant’s motion to suppress. 
Accordingly, we imply the findings of fact that are supported by
evidence and necessary to support the ruling.  See Orr, 306 S.W.3d at 398.

          Upon a criminal defendant’s
appropriate challenge to evidence offered to prove his guilt, the trial court
must exclude, or admit subject to a limitation, the evidence if it was obtained
in violation of the defendant’s right to be secure in his property against
unreasonable government searches.  See U.S. Const. amend.
IV, XIV; Amador, 275 S.W.3d at 880 n.4 (citing Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961)).  A government search is unreasonable only if
it invades the defendant’s reasonable expectation of privacy in the thing
searched.  See Luna v. State, 268 S.W.3d 594, 615 (Tex. Crim. App.
2008) (citing Rakas v. Illinois,
439 U.S. 128, 139, 99 S. Ct. 421, 428 (1978)). 
A search that invades a defendant’s reasonable expectation of privacy is
nevertheless reasonable if a third party having actual or apparent common
authority over the property searched consents. 
Hubert v. State, 312 S.W.3d
554, 560–61 (Tex. Crim. App. 2010).  A third party has actual common authority if
he and the other party mutually use the property and have joint access or
control for most purposes.  Id.  A third party has apparent common authority if
the police officer reasonably, though erroneously, believes the third party
purporting to provide consent has actual common authority.  Id.  The State has the burden to prove by a
preponderance of the evidence that the party who consented had authority.  Id.

          Where a juvenile defendant lives with
a parent and that parent consents to a search of defendant’s bedroom, there
arises a rebuttable presumption that the parent had sufficient common authority
over the bedroom to authorize the consent to search.  Id.  Appellant bases his assertion that his mother
lacked the common authority to use the bedroom on the fact that he was sleeping
in the bedroom at the time of the search. 
Sergeant Huynh’s testimony, however, reveals that the apartment only had
two bedrooms shared among three residents—appellant, his mother, and his
brother.  The record reveals that one
bedroom was appellant’s mother’s and that on the morning of the search,
appellant and his brother were sharing the other bedroom, both asleep.  That appellant’s brother also slept in the
bedroom, at least on that occasion, weakens appellant’s claim that he had
authority over the bedroom to the exclusion of other family members.  Appellant also points out that his mother, in
talking the police, referred to it as “his bedroom.”  His mother’s use of the possessive pronoun
could reasonably be interpreted as a mere indication that the bedroom was the one
that appellant used.  Given that the
trial court did not make explicit findings of fact in this regard, we imply
findings that appellant failed to rebut the presumption of common authority.

          Appellant also contends that police
began their search before seeking consent from appellant’s mother.  Appellant quotes the first portion of the
testimony reproduced below:

[Prosecutor]:             Okay.  What did you tell her about why you were
there?

 

[Sergeant
Huynh]:     I told her I was conducting a
follow-up investigation.  I . . . [j]ust
kept, in general, that it was a murder investigation and if she had a son named
Chris Crenshaw and she answered, Yes.

 

. . . .

 

[Sergeant
Huynh]:     I asked her if Chris was home
and she said, Yes.
I said, May I speak to Chris?

                                  She said, Sure.  She
said, Chris is sleeping.

                                  She pointed at
. . .  [the apartment] unit . . . , to
say, He’s up there sleeping with his brother in his bedroom.

I said, May I talk to him?

At that time she said, Sure.

At that time she turned her
engine off, handed me the car keys and pointed to the house keys and said this
was the key to the house.

. . . .

So, I ran up [to the apartment
unit front door]    . . . [and] I handed
Sergeant Newcomb the key and came back down, continuing my conversation with
her.

 

. . . .

 

[Sergeant
Huynh]:     [Right] [a]fter I handed the
key to Sergeant Newcomb, I came back down and continued to talk to her and I
asked her if I may go into her apartment and look around and I – that’s when I
pulled out the consent to search form . . . 
– explained to her what it was and I handed it to her and asked her to
read it.

 

. . . .

 

[Prosecutor]:             Does she sign [the consent form]?

 

[Sergeant
Huynh]:     Yes

 

[Prosecutor]:             Now, what is [the consent form]
authorizing . . .  you or Sergeant
Newcomb, to do?

 

[Sergeant
Huynh]:     It authorizes myself and
Sergeant Newcomb to go in and basically, as it says on here, to seize any – all
letters, papers, material, any property which we may desire.

 

. . . .

 

[Prosecutor]:             Sergeant Huynh, after [appellant’s
mother] signed the consent to search the apartment, was the apartment searched?

 

[Sergeant
Huynh]:     Just the room.  That’s what I went up there and took the
consent to search form with me and I told Sergeant Newcomb we had been
authorized to search the apartment, but we concentrated in the bedroom where
[appellant] was sleeping.

 

          Appellant contends that, by giving
Sergeant Huynh the key to her apartment, appellant’s mother was merely
consenting to Sergeant Huynh speaking to her son and was not consenting to a
search of the apartment.  However, by
giving Sergeant Huynh the key, appellant’s mother implicitly consented to the
police entering into her apartment to speak to appellant.  No evidence shows that the police conducted
any search, other than for appellant, until Sergeant Huynh returned with full
search and seizure consent.  We hold that
the trial court did not abused its discretion in denying the motion to suppress
by impliedly determining that the officers did not exceed the scope of the
search.  See Joseph v. State, 807 S.W.2d 303, 307 (Tex. Crim. App. 1991)
(“The scope of a search . . . is restricted to the object of the search and the
places in which there is probable cause to believe it may be found.”) (citing United States v. Ross, 456 U.S. 798, 924,
102 S. Ct. 2157, 2172 (1982)).  We
overrule appellant’s fourth issue.

Ineffective Assistance of
Counsel

          In his fifth
issue, appellant asserts that his trial counsel was ineffective by failing to
challenge the admission of his oral statement and the revolver because they
were obtained after an illegal arrest.  

A.      Applicable Law

          An appellant
can prevail on a claim of ineffective assistance of counsel only if he proves
by a preponderance of the evidence that (1) defense counsel’s performance was
so deficient that his assistance fell below an objective standard of reasonableness
and (2) there is a reasonable probability that but for the deficient
performance, the outcome would have been different.  Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing Strickland v. Washington, 466 U.S. 668,
686, 104 S. Ct. 2052, 2063-64 (1984)). 
The effectiveness of assistance of counsel is reviewed in context with
the totality of the representation and the particular circumstances of each
case.  Id. at 813.  In proving that
his counsel’s performance was deficient, an appellant must overcome a strong
presumption that counsel’s action was a sound trial strategy.  Id.  To show the lack of a sound trial strategy,
an appellant must show that if counsel had lodged the objection, it would have
been successful.  Alexander v. State, 282 S.W.3d 701, 710 (Tex. App.—Houston [14th
Dist.] 2009, pet. ref’d).

The custodial detention of a person constitutes an illegal
arrest if (1) there is no probable cause to believe that the person committed
an offense or (2) the police lacked a warrant and no exception to the warrant
requirement applies.  See Tex.
Code Crim. Proc. Ann. art. 14.01–.02, .04 (West 2005), 14.03, .031 (West
Supp. 2010); Kaupp, 538 U.S. at 630,
123 S. Ct. at 1846; Dyar v. State,
125 S.W.3d 460, 463 (Tex. Crim. App. 2003). 
A police officer has probable cause if based on the totality of the
circumstance before him, he could reasonably believe that the elements
comprising the offense exist.  See Delgado v. State, 718 S.W.2d 718,
720–21 (Tex. Crim. App. 1986).  A police
officer may arrest a person without a warrant if he has probable cause to
believe that the person has committed an offense in his presence or within his
view.  See Tex. Code. Crim. Proc.
Ann. art. 14.01(b); Kaupp, 538
U.S. at 630, 123 S. Ct. at 1846; Dyar,
125 S.W.3d at 463.  “A
formal arrest . . . always constitutes ‘custody’ for purposes of
[custodial interrogation], regardless of the offense that prompted the
arrest.”  Thai Ngoc Nguyen v. State, 292 S.W.3d 671, 677 n.27, 677–78 (Tex.
Crim. App. 2009); Garcia
v. State,
827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (rejecting pretextual arrest
doctrine).

B.      Analysis

Here, it is undisputed that the
police did not have a warrant. 
Accordingly, appellant’s warrantless arrest was illegal if no warrant exception
applies.[1]  See Dyar, 125 S.W.3d at 463.  Pursuant to appellant’s mother’s written
consent to a search of her apartment, Sergeant Huynh discovered
marijuana in the bedroom that appellant was sleeping in when the police
arrived.  Although appellant shared that
bedroom with his brother, his mother referred to the room as “his bedroom” when
speaking with the police.  We note that,
on appeal, appellant argues that the bedroom was under his exclusive
control.  Under these circumstances, the
police had probable cause to believe that appellant committed, within their
view, the offense of unlawful possession of marijuana.  See Tex. Code Crim.
Proc. Ann. art. 14.01(b); Tex.
Health & Safety Code Ann. § 481.121(a) (West 2010).  Accordingly, the police were
authorized to arrest appellant without a warrant.  See Thai
Ngoc Nguyen, 292 S.W.3d at 677–78 (holding arrest for possession of
methamphetamine was sufficient to justify custodial interrogation regarding
other offense); Delgado, 718 S.W.2d at 720–21.  The subjective intention of the police, to
interrogate appellant concerning the capital murder, is irrelevant to whether
appellant’s arrest was illegal.  See Thai
Ngoc Nguyen, 292 S.W.3d at 677–78; Randle v. State, 89 S.W.3d 839, 843 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d).

Appellant also contends his trial
counsel should have challenged the admission of the revolver for having been
obtained in an unlawful arrest.  However,
the police obtained the revolver in a lawful search of appellant’s bedroom,
which occurred at the same time as appellant’s purportedly illegal arrest.  See
Monge, 315 S.W.3d at 40.  Appellant does not explain how his
simultaneous arrest led police to obtain the revolver.  Moreover, appellant’s trial counsel properly
objected on the ground that the revolver was obtained in an illegal search.

          We hold that
appellant has not established that his defense counsel’s performance was so
deficient that his assistance fell below an objective standard of
reasonableness.  See Alexander, 282 S.W.3d at 710.  We overrule appellant’s fifth issue.

Conclusion

          We affirm the judgment.

 

                                                                   

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Justices
Jennings, Alcala, and Sharp.

 

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           Even
if we were to assume that the police had probable cause to believe that
appellant was a party to the robbery-turned-capital murder, this would be
insufficient, standing alone, to justify a warrantless arrest.  See
Dyar v. State, 125 S.W.3d 460, 463 (Tex.
Crim. App. 2003).